IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CHRISTOPHER CLARK | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 16-1804 |
| JEFFERSON B. SESSIONS III, | ) | |
| *Attorney General of the United States,* et al., | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Conti, Chief United States District Judge

Before the court is the motion for summary judgment of Plaintiff Christopher Clark ("Clark") seeking declaratory and injunctive relief (ECF No. 22). This case involves an as-applied challenge to the constitutionality of 18 U.S.C. § 922(g)(1), in which Clark seeks restoration of his Second Amendment right to possess a firearm. The motion is fully briefed and is ripe for decision. The government does not oppose the motion, but defers to the "sound discretion" of the court as to whether further inquiry into the facts is necessary. (ECF No. 24 at 3).

I. BACKGROUND & PROCEDURAL HISTORY

Clark is a citizen of Pennsylvania (ECF No. 22 at 2). He was a combat engineer in the United States Army, specializing in explosives involving mines and traps, and received an honorable discharge (ECF No. 25-1 at 34). For the past nineteen years, he has been employed as a corrections officer at the State Correctional Institution, Mercer (ECF

1

No. 22 at 3). He wishes to possess firearms for self-defense and for the defense of his family.

On May 26, 2002, Clark was convicted under 18 Pa. Cons. Stat. § 6106(a)(2) for carrying a firearm without a license (ECF No. 22 at 3). He was sentenced to one year of probation and a fine of two-hundred and forty-two dollars. Although classified as a misdemeanor under Pennsylvania law, Clark's conviction under § 6106(a)(2) provided for a maximum sentence of five years of imprisonment. 18 Pa. Cons. Stat. 106(b)(6).

Federal law prohibits the possession of firearms by any person convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g). Because of his 2002 conviction, therefore, Clark is unable to possess a firearm. Violation of § 922(g)(1) is a felony criminal offense punishable by fine and imprisonment of up to ten years. *See* 18 U.S.C. § 924(a)(2).

Clark's 2002 conviction arose from an altercation with Beth Carvella ("Carvella"), his then-girlfriend, outside her place of work on September 27, 2001. According to the criminal complaint, an unnamed witness stated that "the defendant held the loaded gun to his own head." (ECF No. 25-1 at 40). Clark was charged with reckless endangerment in violation of 18 Pa.C.S. § 2705,[1] but the charge was withdrawn. (ECF No. 21-3 at 10). Clark denied holding the gun to his head and testified that he took the firearm out of his waistband only to put it away in his truck in order to follow his then-girlfriend into the diner where she worked. (ECF No. 25-1 at 16-17). Following the arrest, Clark underwent a psychological evaluation by Dr. Meyer that was unremarkable: it was determined that he was "fit for duty" (ECF No. 25-1 at 34-37). Carvella told Dr.

---

[1] 18 Pa.C.S. § 2705 provides: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

2

Meyer that "at no time was she intimidated or felt that her life was in danger." (ECF No. 25-1 at 35).

Clark purchased the firearm in question "sometime between September 1996 and March 1997" with the intent to carry it for protection[2] (ECF No. 24 at 7; ECF No. 25-1 at 6). Despite this, he claims he "didn't start carrying it until . . . two weeks before" the date of the crime for which he was convicted because the events on September 11, 2001 troubled him (ECF No. 24 at 7; ECF No. 25-1 at 6). He also purchased a holster on "[p]robably the same day that [he] bought the handgun" (ECF No. 24 at 8; ECF No. 25-1 at 20). Carvella asserted that "the gun is taken whenever they travel," but Clark explained he "would just leave it in [his] truck" and "never wore" the holster (ECF No. 24 at 8; ECF No. 25-1 at 11).

Clark asserts that he has remained "law-abiding" since his 2002 conviction.[3] The government disagrees, and contends that: "the legal conclusion that Mr. Clark is 'law-abiding' is a fact, material or otherwise, subject to determination through a statement of material facts." (ECF No. 23 ¶ 6; ECF No. 25 ¶¶ 6, 8). The government presents one incident at Clark's work as evidence of less than law-abiding behavior that, in the government's view, should preclude him from possession of a firearm. About "a year and a half ago," Clark was disciplined with a "five-day suspension" for "insubordination" (ECF No. 24 at 8; ECF No. 25-1 at 24-26). Clark testified that a female lieutenant

---

[2] Clark was deposed on March 12, 2018, about why he wanted to carry a handgun. (ECF No. 25-1 at 6). He answered: "To carry, protection." *Id.*

[3] Clark states: "Christopher Clark is over the age of 21, is not under indictment, has never been convicted of a felony or misdemeanor crime of domestic violence, is not a fugitive from justice, is not an unlawful user of or addicted to any controlled substance, has not been adjudicated a mental defective or committed to a mental institution, has not been discharged from the Armed Forces under dishonorable conditions, has never renounced citizenship, and has never been the subject of a restraining order relating to an intimate partner." (ECF No. 1).

3

confronted him while he was taking "two hamburgers from the inmate dining hall . . . [to] give . . . to [an] inmate for fixing [his] coat" (ECF No. 24 at 9; ECF No. 25-1 at 24-26). After she intervened, he "dropped them on the floor and walked away." *Id.* Clark concluded that she "had something personal against" him and is "a bitter, bitter person" despite having never before interacted with her. *Id.*

II. <u>STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate where the moving party establishes "that there is no genuine dispute as to any material fact" and judgment is appropriate "as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is a sufficient evidentiary basis for a reasonable jury to find for the nonmoving party, and "[a] fact is 'material' if, under substantive law of the case, it is outcome determinative." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008); *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 129 (3d Cir. 1998).

The moving party initially bears the burden of showing the absence of a genuine dispute of material fact, in which case the burden shifts to the nonmoving party to identify specific facts evidencing a genuine issue for trial. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 314 (1986)). To support their factual assertions, the parties must cite to specific parts of the record or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Typically, "a district court may not make credibility determinations or engage in any weighing of the evidence" in analyzing a motion for summary judgment. *Marino v.*

4

*Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Where "common sense dictates that" certain facts are "incredulous," however, a district court need not assume that those are uncontroverted and must be assumed as true. *See, e.g., Kach v. Hose*, Civ. No. 06-1216, 2008 WL 4279799 (W.D. Pa. Sept. 12, 2008); *cf. Scott v. Harris*, 550 U.S. 372, 380 (party's "version of events" may be rejected where "blatantly contradicted by the record"). Ultimately, "summary judgment is inappropriate [where] there is a sufficient quantum of evidence on either side for reasonable minds to differ," but "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Schoonejongen*, 143 F.3d at 130; *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

III. <u>ANALYSIS</u>

    A.  <u>THE SECOND AMENDMENT</u>

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. This amendment protects an individual's right to possess a firearm "unconnected with militia service," but that individual right is "not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 582, 626 (2008). *Heller* provided some examples of "presumptively lawful regulatory measures" that can constrain the right, including "the possession of firearms by felons." *Id.* at 626-27. This measure is codified in 18 U.S.C. § 922(g)(1), which generally prohibits the possession of firearms by any person convicted in any court of a "crime punishable by imprisonment for a term exceeding one year." There is an exception, however, for "[a]ny conviction

5

which has been expunged, or set aside or for which a person has been pardoned *or has had civil rights restored.*" 18 U.S.C. § 921(a)(20) (emphasis added). In this case, Clark asks the court to restore his civil rights, so he can lawfully possess a firearm.

   B.  THE FRAMEWORK FOR AS-APPLIED SECOND AMENDMENT CHALLENGES

An as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)); *see Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("It is axiomatic that a statute may be invalid as applied to one state of facts and yet valid as applied to another." (internal quotation marks omitted)). Accordingly, this review of Clark's as-applied challenge requires us to consider whether his particular circumstances exempt him from § 922(g)(1). The Third Circuit Court of Appeals, in a plurality opinion, set forth a two-step, burden-shifting analysis this court must apply to analyze Clark's as-applied challenge to § 922(g)(1). *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc); *see United States v. Brooks*, No. 17-250, 2018 U.S. Dist. LEXIS 87591 (W.D. Pa. May 24, 2018) (providing an overview of the background, varying opinions, and framework for as-applied challenges to § 922(g)(1) from *Binderup*). The government acknowledges that the analysis in this case closely parallels *Binderup*.

First, Clark "must prove . . . that a presumptively lawful regulation burdens his Second Amendment rights. This requires [him] to clear two hurdles: (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member . . . and then (2) present facts about himself and his

6

background that distinguish his circumstances from those of persons in the historically barred class." *Binderup*, 836 F.3d at 346-47. For Clark to succeed at this step, the court "must find facts to determine whether he has adequately distinguished his circumstances from those of persons historically excluded from Second Amendment protections." *Id.* at 347. "Not only is the burden on the challenger to rebut the presumptive lawfulness of the exclusion, but the challenger's showing must be strong." *Id.*

Second, if Clark succeeds at step one, "the burden shifts to the Government to demonstrate that the regulation satisfies . . . heightened scrutiny." *Id.* The court must determine "whether the Government has made a strong enough case for disarming a person found after step one to be eligible to assert an as-applied challenge. This turns in part on the likelihood that the [c]hallenger[] will commit crimes in the future." *Id.* at 354 n.7. Intermediate scrutiny applies to this analysis. *Id.* at 353; *see Brooks*, 2018 U.S. Dist. LEXIS 87591, at *14.

    1. STEP ONE

        (a) PRESUMPTION

Although § 922(g)(1) bars possession of firearms by those convicted of "a crime punishable by imprisonment for term exceeding one year," its prohibition excludes those convicted of a "State offense classified by the laws of the State as a misdemeanor" unless it is punishable by more than two years imprisonment. 18 U.S.C. § 921(a)(20)(B). Clark was convicted of a misdemeanor subject to § 922(g)(1): his misdemeanor conviction under 18 Pa.C.S. § 6106(a)(2) was punishable by up to five years imprisonment. Clark is subject to a firearm ban that is, per *Heller*, "presumptively lawful."

7

### (b) TRADITIONAL JUSTIFICATION

"[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *Binderup*, 836 F.3d at 348 (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)). Unvirtuous citizens include those "persons who have committed *serious* crimes." *Id.* at 348-49.

The class of persons who have committed serious crimes (i.e. unvirtuous citizens) "forfeit the right to possess firearms much the way they 'forfeit other civil liberties, including fundamental constitutional rights.'" *Id.* at 349 (quoting *Barton*, 633 F.3d at 175). Based on his 2002 conviction, Clark *appears* to be a member of this class.

### (c) APPLICATION TO PLAINTIFF

Clark has a burden to overcome the presumptive lawfulness of § 922(g)(1) by showing that his conviction under 18 Pa. Cons. Stat. § 6106(a)(2) was not a serious crime, i.e., to distinguish his circumstances from the historically barred class of unvirtuous citizens. To determine whether a crime is "serious," the court may consider, among other factors:[4]

- the statutory maximum penalty of the crime;
- whether the crime is a misdemeanor;
- whether use of force is an element of the crime;[5]

---

[4] The parties in this case did not address any other factors.

[5] These first three factors – "the elements of the offense, the actual sentence, and the state of the law" – are "objective indications of seriousness . . . well within the ambit of judgment exercised daily by judges." *Bimderup*, 836 F.3d at 353 n.5.

8

- the sentence actually imposed upon the challenger; and

- whether there is consensus among the states about the seriousness of the offense.

*Id.* at 351-53. This analysis is irrespective of whether the crime is violent or not. *Id.* at 349. "[E]vidence of a challenger's rehabilitation or his likelihood of recidivism is not relevant to the step-one analysis." *Id.* at 356. The court will consider each of the factors identified in *Binderup*.

**(i) The statutory maximum penalty of the crime**

18 Pa. Cons. Stat. § 6106(a)(2) allows for a maximum penalty of five years imprisonment.

**(ii) Whether the crime is a misdemeanor**

18 Pa. Cons. Stat. § 6106(a)(2)[6] is a misdemeanor that prohibits carrying a firearm without a license. It applies to persons otherwise eligible to possess a firearm and to persons who have not committed any other criminal violation.

**(iii) Whether use of force is an element of the crime**

Use of force is not an element of this crime.

**(iv) The sentence actually imposed upon the challenger**

Clark was sentenced to one year of probation and a fine of two-hundred and forty-two dollars, which is a minimal sentence.

In *Binderup*, the court restored the Second Amendment rights of two challengers ("Binderup" and "Suarez") who received tougher sentences following their convictions than Clark. *Id.* at 340. Binderup was convicted under Pennsylvania law for corrupting a

---

[6] 18 Pa. Cons. Stat. § 6106(a)(2) provides: "A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree."

9

minor, a misdemeanor subject to imprisonment for up to five years, and was sentenced to three years probation and a three-hundred dollar fine.[7] *Id.* at 340; 18 Pa. Cons. Stat. §§ 6301(a)(1)(I). Suarez was convicted under Maryland law for carrying a handgun without a license, which is a misdemeanor subject to imprisonment for "not less than 30 days and not [more than] three years or a fine of not less than $250 and not [more than] $2,500 or both." *Id.* at 340; Md. Code. Ann. Art. 27, §36(B)(b) (1990) (now codified at Md. Code Ann. Crim. Law § 4-203). Suarez received a suspended sentence of 180 days of imprisonment, a $500 fine, and a year of probation. *Id.* at 340.[8]

**(v) Whether there is consensus among the states about the seriousness of the offense**

There is no consensus regarding the seriousness of carrying a firearm without a license among the states. Thirty-eight states punish the unlicensed carrying of a concealed weapon. *See* Law Ctr. to Prevent Gun Violence, *Concealed Weapons Permitting*, http://smartgunlaws.org/gun-laws/policy-areas/firearms-in-public-places/concealed-weapons-permitting/ (last visited July 5, 2018). Although some states classify this as a serious crime, "more than half prescribe a maximum sentence that does not meet the threshold of a traditional felony (more than one year in prison) and others do not even require a specific credential to carry a concealed weapon." *Binderup*, 836 F.3d at 352 (citing to Thomson Reuters, *50 State Survey: Right to Carry a Concealed Weapon (Statutes)* (October 2015); U.S. Gov't Accountability Off., *States' Laws and*

---

[7] Despite Binderup receiving a tougher sentence than Clark, the court in *Binderup* called his sentence a "colloquial slap on the wrist." *Binderup*, 836 F.3d at 340.

[8] Eight years after the conviction for carrying a firearm without a license, Suarez was convicted for the state-law misdemeanor of driving under the influence of alcohol. *Id.* This conviction, however, was not subject to § 922(g)(1). *Id.*

10

*Requirements for Concealed Carry Permits Vary Across Nation* 73-74 (2012) *available at* http://www.gao.gov/assets/600/592552.pdf (last visited Aug. 7, 2018)).

**(vi) Summary and Application of the Step One Factors**

The 2002 crime has a maximum penalty of five years, the crime is a misdemeanor, use of force is not an element of the crime, Clark received a relatively light sentence, and there is no consensus regarding the crime's seriousness. Accordingly, it is evident that Clark adequately and compellingly demonstrated the factual grounds necessary to satisfy step one. In *Binderup*, the court determined that crimes of Binderup and Suarez were not serious enough to place them with the class of "unvirtuous" citizens that § 922(g)(1) was intended to restrain. Since Clark's crime was treated less seriously than the challengers in *Binderup*, it is not serious enough for his claim to fail at step one.

2. STEP TWO

There is "[n]o doubt that § 922(g)(1) is intended to further the government interest of promoting public safety by 'preventing armed mayhem.'" *Binderup*, 836 F.3d at 353 (citing *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (en banc)). "Against that important government interest [this court] must consider whether banning the challenger from possessing firearms and ammunition is *substantially* related to that purpose." *Brooks*, 2018 U.S. Dist. LEXIS 87591, at *14 (citing *Binderup*, 836 F.3d at 341, 353). This court must balance "the Challengers' total disarmament [with] the promotion of public safety." *Binderup*, 836 F.3d at 354. The government must "present some meaningful evidence, not mere assertions, to justify its predictive . . . judgments" regarding the challenger's potential future commitment of crimes. *Id.* "Parties may use statistics to show that people who commit certain crimes have a high (or low) likelihood

11

of recidivism that warrants (or does not warrant) disarmament, even decades after a conviction." *Id.* at 355.

The government bears the burden of persuasion at step two. The government must present some meaningful evidence, not mere assertions, to justify its predictive judgment that Clark is likely to misuse a firearm. *Binderup*, 836 F.3d at 354. Here, the government presented only the circumstances surrounding Clark's 2002 conviction and a recent work-related incident as evidence of his potential to commit crimes in the future. The fact that the 2002 conviction stemmed from an argument is potentially troublesome. Citizens who turn to violence following arguments would present a clear danger to the community. There is no evidence, however, that Clark used the firearm threateningly in 2002. Clark testified, without dispute, he was simply putting it away in his truck before following his girlfriend into the restaurant to continue the verbal argument. He made a conscious, responsible decision to put the gun in safekeeping despite being in the midst of an argument. Following the incident, Carvella still described Clark as her "best friend" and told Dr. Meyer that she never felt endangered during the incident. (ECF No. 25-1 at 35). Dr. Meyer opined that Clark was fit for duty and did not present a significant danger to others. (ECF No. 25-1 at 36). The couple broke up about a year after the incident, but Clark has since married and had no issues of domestic violence. The government offered no contrary evidence.[9]

---

[9] The statement of an anonymous witness in a criminal complaint cannot defeat summary judgment. *See Damascus Bakery, Inc. v. Elwell*, No. CIV. 08-1568 WJM, 2010 WL 3359526, at *5 (D.N.J. Aug. 25, 2010) ("Evidence derived from this criminal complaint, however, is hearsay, and "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment"); *accord Graham v. Jersey City Police Dep't*, No. CIV.A. 11-7326, 2014 WL 7177362, at *3 (D.N.J. Dec. 16, 2014) ("statements made to police from a witness are inadmissible hearsay where, as in this case, Defendants are offering the police report to establish the truth of the matters set forth in the report").

The length of time between Clark's conviction and the filing of this action in 2018 is significant. He has had no encounters with law enforcement since September 2001. In *Binderup*, Judge Ambro discounted the government's estimate of the likelihood of recidivism because Binderup's and Suarez's offenses were, respectively, 20 and 26 years old. *Binderup*, 836 F.3d at 353-54. The court cited a study that explained: "[g]enerally, the risk of recidivism was highest during the first year after admission to probation," and that "[a]s released prisoners and probationers age, they tend to exhibit lower rates of recidivism." *Id.* at 354 (citing Iowa Div. of Crim. & Juvenile Justice Planning, *Recidivism Among Iowa Probationers* 2 (July 2005), *available* at http://publications.iowa.gov/15032/ (last visited July 30, 2018)). Approximately seventeen years have passed since the incident that led to Clark's conviction. His risk of recidivism has, statistically speaking, significantly diminished.

The incident of alleged insubordination at work is not evidence of behavioral patterns with a likelihood of recidivism or unsuitability to possess a firearm. Dropping cheeseburgers on the floor and walking away during an argument with a superior officer does not evince that Clark would mishandle a firearm if similarly frustrated.

Clark expresses a legitimate reason for desiring firearms and the government presented insufficient evidence to show he is at risk of recidivism. Upholding the ban on his possession of firearms and ammunition does not substantially further the government interest of preventing armed mayhem. Clark met his burden at step one; the government failed to meet its burden at step two.

IV. CONCLUSION

Clark brought an as-applied challenge to 18 U.S.C. § 922(g)(1), which is governed by the *Binderup* framework. He adequately and compellingly demonstrated the factual grounds necessary to satisfy step one by showing that his crime was not serious enough to include him in the historically barred class. At step two, the government did not present enough evidence to show that restoring Clark's Second Amendment rights substantially impairs the legitimate government interest of preventing armed mayhem. Accordingly, Clark's motion for summary judgment will be granted.

Clark did not submit a proposed order with his motion, as required by the court's Local Rules. Within seven days, counsel for Clark shall meet and confer with defense counsel and submit a proposed order to restore Clark's civil rights under the Second Amendment.

An appropriate order follows.

Dated: August 21, 2018

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER CLARK | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFERSON B. SESSIONS III, | ) | |
| *Attorney General of the United States,* | ) | Civil Action No. 16-1804 |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

And now this 21st day of August, 2018, in accordance with the memorandum opinion, the motion for summary judgment is GRANTED. Within seven days, plaintiff's counsel shall meet and confer with defense counsel and submit a proposed order to restore Christopher Clark's civil rights under the Second Amendment.

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge